FILED - USDC -NH
2023 DEC 22 PM 12:06

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| *Jennifer Fisher* <br> 19 Maple Drive <br> Bedford, NH 03110 | ) <br> ) <br> ) <br> ) | Docket No.:_____ |
| *Plaintiff*, | ) <br> ) | **PLAINTIFF'S COMPLAINT FOR** <br> **DAMAGES AND OTHER RELIEF** |
| *v.* | ) <br> ) | |
| *Nashua Eye Associates, P.A.* <br> 5 Coliseum Avenue <br> Nashua, NH 03063 | ) <br> ) <br> ) | **JURY TRIAL DEMANDED** |
| *Defendant*, | | |

COMES NOW the Plaintiff, Jennifer Fisher ("Plaintiff" or "Jennifer"), for her Complaint for Damages, states as follows:

JURISDICTION, CAUSE OF ACTION, AND VENUE

1. Jennifer invokes this Court's jurisdiction pursuant to 28 U.S.C. §1331.

2. Jennifer brings her claims pursuant to the American with Disabilities Act as Amended ("ADA") pursuant to 42 U.S.C. §12101, *et. seq.*

3. Jennifer's request for legal expenses and attorney's fees and costs, is brought pursuant to 42 U.S.C. §1988.

4. Defendant's principal place of business is in Nashua, New Hampshire, and the wrongful acts occurred in New Hampshire. Therefore, venue is appropriate in this Court pursuant to 28 U.S.C. §1391.

## PARTIES

5. Jennifer is an individual who resides at 19 Maple Dr., Bedford, NH 03110.

6. Defendant's principal place of business is at 5 Coliseum Ave., Nashua, NH 03063.

## PROCEDURAL REQUIREMENTS

7. On or about March 30, 2023, Jennifer dually filed a Charge of Discrimination with the New Hampshire Commission for Human Rights and the Equal Employment Opportunity Commission ("EEOC") within 300 days of the occurrences of the unlawful acts.

8. Jennifer stated violations of the ADA, specifically, failure to accommodate her disabilities, creating and maintaining a hostile work environment, retaliation, contributing to Jennifer's medical conditions, and wrongful constructive discharge.

9. Jennifer has filed this Complaint within 90 days of receiving a Right to Sue letter from the EEOC.

## FACTS

10. Jennifer is diagnosed with hyperacusis, misophonia, tinnitus, generalized anxiety disorder, post-traumatic stress disorder, double vision, and photophobia. Separately, and in combination, these conditions make certain types and levels of noises intolerable to the point they give Jennifer severe headaches, including migraines, cause her anxiety, cause her to suffer from post-traumatic stress disorder triggers, and affect her ability to

concentrate. Among other major life activities, these conditions substantially impair Jennifer's ability to work.

11. On or about January 31, 2022, Defendant hired Jennifer as an Accounts Payable Clerk in the Business Office Department.

12. In February 2022, Jennifer spoke with a co-worker, informing her that if she appears to be upset, she is not. Jennifer also informed this co-worker that she is faced with medical conditions, is self-conscious about the physical changes of her forehead, and is suffering with vision issues and photophobia. Jennifer mentioned to this co-worker that Dr. John Dagianis, an Ophthalmologist with Nashua Eye Associates, is aware of her medical complications and is helping her.

13. In February 2022, days following Jennifer's conversation with her co-worker, this same co-worker began making intentional throat clearing noises while at her desk.

14. A few days later, Jennifer reported her co-worker's behavior to the Human Resources Manager, Ms. Elaine St Godard.

15. Following Jennifer's meeting with Ms. St Godard, the Accounting Manager, Ms. Krystie O'Donnell, witnessed Jennifer in an emotional state of distress and asked her what was bothering her. Jennifer did not want more employees to know about her noise triggers; however, when Ms. O'Donnell said to Jennifer, "*I can't help if I don't know what is bothering you*," Jennifer very reluctantly informed Ms. O'Donnell what her co-worker was doing, explaining the specific bothersome and unwanted noises, entrusting that Ms. O'Donnell would help her, and not use the information against her. Sadly, this would

not be the case, and Jennifer's fears were later validated, as her supervisors ultimately used this information against her, retaliating against Jennifer after she later spoke with an employee from another department.

16. Ms. St. Godard, Ms. O'Donnell, and Jennifer subsequently had meetings about her concerns of harassment.

17. In February 2022 and until Jennifer resigned from her position with Nashua Eye Associates in July 2022, she informed and made it known to the Human Resources Manager, Ms. St Godard, and her direct supervisor, Accounting Manager, Ms. O'Donnell, about her co-workers' behavior, and that it was physically affecting Jennifer.

18. In or around February 2022, a "*temporary*" workstation was proposed by Human Resources Manager, Ms. St Godard and Accounting Manager, Ms. O'Donnell; however, this space did not have Wi-Fi connectivity at that time. Jennifer knew that her co-worker would soon be resigning from the organization, as this co-worker was moving out-of-state; therefore, Jennifer informed both, Ms. St Godard and Ms. O'Donnell that she would wear foam ear plugs as needed during her co-worker's last couple of days of employment with the Defendant.

19. Human Resources Manager, Ms. St Godard, did not offer Jennifer an ADA Workplace Accommodations form for her medical providers to complete, to validate Jennifer's medical requirements; however, Jennifer made it blatantly obvious that she was being physically and emotionally affected by the harassing noises being made by employees in the workplace environment.

20. Shortly after reporting the harassing activities being made by Jennifer's co-worker, another co-worker in the Business Office also began making intentional loud coughing noises while at his desk. Shortly thereafter that, additional employees from other departments visited the Business Office to speak with Jennifer's co-worker, and they also engaged in making intentional throat clearing noises while at her co-worker's desk and when walking in the Business Office corridor, which was in close proximity to Jennifer's workstation. The environment became a hostile and volatile environment.

21. When another employee transferred to the Business Office to replace the employee who was in the process of resigning, within a short amount of time, this employee also engaged in making the same targeted and unwanted harassing noises.

22. A few weeks later, Jennifer unexpectedly met with an employee of the Optical Department, apologizing for her behavior as a patient, as Jennifer did not know at that time, that she was suffering from a medical condition that affects her vision. During this conversation, Jennifer discussed the unwanted, pervasive, and harassing behaviors that were taking place in the Business Office, and that additional employees were engaging in the unwanted, pervasive, and harassing behavior that was triggering Jennifer's medical conditions. Jennifer spoke of her concerns that employees must have accessed her medical information that she discussed during her appointment with Dr. Dagianis.

23. The Optical Department employee took it upon herself to report to the Human Resources Manager about Jennifer's concerns that Defendant's employee(s) accessed her protected medical information without her consent.

24. The next day, Human Resources Manager, Ms. St Godard, and Accounting Manager, Ms. O'Donnell, requested a meeting with Jennifer. They both reassured Jennifer that no one has accessed her [electronic] medical record. Jennifer responded, disagreeing with this finding, as she did not share the specific toxic and harmful noise triggers with any co-worker or employee at Nashua Eye Associates; that is, except for when Jennifer received medical care as a patient, and until the time when she asked her supervisors for help with addressing her co-worker making unnecessary, harassing trigger noises that were both, physically and emotionally affecting her.

25. In or around March or April 2022, both, the Human Resources Manager, Ms. St Godard, and the Accounting Manager, Ms. O'Donnell, retaliated against Jennifer and began to engage in making the same targeted triggering and harassing noises that Jennifer had reported to them in confidence, informing them that she was physically and emotionally affected by these noise triggers. Jennifer's supervisors continued engaging in harassing her and escalated the volume of noise in the office, up through her last day of employment with the Defendant.

26. Jennifer's co-workers' and supervisors' actions, along with other employees of the Defendant, triggered her conditions, causing her migraines, increased anxiety, post-traumatic stress disorder response, and intense heart palpitations.

27. Because Jennifer could not continue to work in the hostile workplace environment due to Defendant's failure to address and stop the ongoing harassing noises being made by her co-workers and supervisors, on July 11, 2022, Jennifer unwillingly submitted her

resignation letter in-person to Dr. John Dagianis. Her resignation letter was dated July 5, 2022, as she intended to issue her resignation letter on that day; however, unfortunately she learned that Dr. Dagianis was out of the office that week.

28. As a proximate result of the Defendant's willful, wanton, malicious, or at least reckless, disregard of Jennifer's human rights, Jennifer has suffered damages, including but not limited to, lost wages, lost earning capacity, lost employment benefits, significant emotional distress, post-traumatic stress disorder, humiliation, inconvenience, physical injuries, and loss of enjoyment of life. She seeks all damages to which she is entitled.

## CLAIMS

### Count I
### (Failure to Accommodate – ADA)

29. Plaintiff incorporates by reference, and re-alleges, all previous paragraphs of the Complaint.

30. Jennifer informed the Defendant that she had noise sensitivities that cause migraines, anxiety, and that negatively impact her ability to concentrate. Jennifer ultimately reported to her managers, that she is physically affected by her co-workers' harassment activities, and she requested that her managers pay attention to the noise triggers and address them from a neutral perspective, rather than telling her co-workers that their intentional actions are physically affecting her. From a previous workplace experience, this would only exacerbate the harassment.

31. Because Jennifer's conditions substantially limit the major life activity of working, they are disabilities as intended by the ADA.

32. The ADA requires that an employer engage in the interactive process with a qualified employee, and to provide a reasonable accommodation unless doing so would create an undue hardship on the employer. Defendant failed to offer Jennifer an ADA Workplace Accommodations form for her medical providers to complete.

33. Jennifer requested an accommodation of resolving the harassing and triggering noises being made by her co-workers. Defendant, instead, allowed Jennifer's co-workers to continue engaging in making the unwanted harassing and triggering noises, and her managers eventually engaged in making the same targeted harassing and triggering noises themselves. This did not resolve the issue that Jennifer had reported to her supervisors, and she continued to be unable to work. Had Defendant provided Jennifer with the requested accommodations, she could have performed the essential functions of her job.

34. Defendant failed to engage in the interactive process with Jennifer, and it failed to provide her with any reasonable type of accommodation.

35. Her supervisors offered a "*temporary*" work area that was not equipped with Wi-Fi connectivity at the time, and it was presented as only a "*temporary*" work area.

36. Defendant had the responsibility of addressing the hostile harassment situation in the workplace environment; however, it failed to do so.

37. Jennifer informed the Defendant that she had noise sensitivities that cause migraines, anxiety, post-traumatic stress disorder, and that negatively impact her ability to

concentrate. She ultimately requested the assistance from both, the Human Resources Manager, Ms. St Godard, and the Accounting Manager, Ms. O'Donnell; however, they later used this information to retaliate against Jennifer, as they themselves also engaged in the unwanted and intolerable noise harassment activities.

38. As a proximate result of the Defendant's willful, wanton, malicious, or at least reckless, violation of Jennifer's human rights, Jennifer has suffered damages, including but not limited to, lost wages, lost earning capacity, lost employment benefits, significant emotional distress, post-traumatic stress disorder, humiliation, inconvenience, loss of enjoyment of life, physical injuries, pain and suffering, legal expenses and attorney's fees and costs, and other damages.

## Count II
### (Hostile Work Environment – ADA)

39. Plaintiff incorporates by reference, and re-alleges, all previous paragraphs of the Complaint.

40. Jennifer informed the Defendant that she had noise sensitivities that physically affect her, causing her anxiety, migraines, post-traumatic stress disorder, and that the noise triggers negatively impact her ability to concentrate.

41. Jennifer verbally requested a reasonable accommodation in order to perform her job, the assistance from the Human Resources Manager to address the unwanted, pervasive, and harmful harassing behaviors of her co-workers from a neutral perspective. Defendant failed to help Jennifer.

42. Furthermore, despite telling the Defendant that her co-workers continued to intentionally target her with repeated and unwanted noises that triggered her disabilities, causing her migraines, anxiety, post-traumatic stress disorder, and intense heart palpitations, Defendant's managers themselves, also engaged in making the same targeted harassing, triggering, and harmful noises that physically and emotionally affect her.

43. Because Jennifer's conditions substantially limit the major life activity of working, they are disabilities as intended by the ADA.

44. A plaintiff may demonstrate an ADA violation by establishing that an employer subjected her to harassment pertaining to a plaintiff's disability that was so severe and pervasive, it can be deemed a hostile or abusive work environment.

45. Jennifer requested reasonable accommodations in order to perform her job. Instead of working with Jennifer to provide her with accommodations by addressing the harassing behaviors of her co-workers from a neutral perspective, Defendant did nothing to address the unwanted, pervasive, and harmful harassing conduct of its employees.

46. As a proximate result of the Defendant's willful, wanton, malicious, or at least reckless, violation of Jennifer's human rights, Jennifer has suffered damages, including but not limited to, lost wages, lost earning capacity, lost employment benefits, extreme emotional distress, post-traumatic stress disorder, intense heart palpitations, physical injuries, humiliation, inconvenience, loss of enjoyment of life, pain and suffering, legal expenses and attorney's fees and costs, and other damages.

Count III
(Retaliation – Harassment – ADA)

47. Plaintiff incorporates by reference, and re-alleges, all previous paragraphs of the Complaint.

48. Jennifer informed the Defendant that she has noise sensitivities that cause triggers and anxiety, and that negatively impact her ability to concentrate. She ultimately met, in-person, with the Human Resources Manager, Ms. St Godard, requesting a reasonable accommodation to address the employees' unwanted, pervasive, and harassing conduct.

49. Instead of working with Jennifer to provide her with accommodations by addressing the harassing behaviors of her co-workers from a neutral perspective, Defendant did nothing to address the unwanted, pervasive, and harmful harassing conduct of its employees.

50. Furthermore, despite telling the Defendant that her co-workers continued to target her with repeated noises that triggered her disabilities, causing migraines, anxiety, and post-traumatic stress disorder, Defendant's managers themselves retaliated against Jennifer, also engaging in making the same harassing, triggering, and harmful noises that physically affect her.

51. Because Jennifer's conditions substantially limit the major life activity of working, they are disabilities as intended by the ADA.

52. As a proximate result of the Defendant's malicious, or at least, reckless violation of Jennifer's human rights, Jennifer has suffered damages, including but not limited to, lost wages, lost earning capacity, lost employment benefits, extreme emotional distress, post-

traumatic stress disorder, physical injuries, humiliation, inconvenience, loss of enjoyment of life, pain and suffering, legal expenses and attorney's fees and costs, and other damages.

Count IV
(Wrongful Termination – Constructive Discharge – ADA)

53. Plaintiff incorporates by reference, and re-alleges, all previous paragraphs of the Complaint.

54. Because Jennifer's conditions substantially limit the major life activity of working, they are disabilities as intended by the ADA.

55. Jennifer verbally requested reasonable assistance to address the volatile work environment. Instead of helping Jennifer, to address the concerns she brought to her supervisors, Defendant allowed her co-workers to continue to target and harass her with the triggering noises, and her supervisors retaliated against Jennifer, also engaging in making the same unwanted, pervasive, and harmful harassing noises.

56. Because the Defendant would not resolve the concerns she brought to her supervisors, and because the Defendant took no action to stop her co-workers from harassing her, Jennifer could no longer continue to work in those conditions. Therefore, Jennifer was forced to resign.

57. As a proximate result of the Defendant's malicious, or at least, reckless violation of Jennifer's human rights, Jennifer has suffered damages, including, but not limited to, lost wages, lost earning capacity, lost employment benefits, extreme emotional distress, post-

traumatic stress disorder, physical injuries, humiliation, inconvenience, loss of enjoyment of life, pain and suffering, legal expenses and attorney's fees and costs, and other damages.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court grant the following relief:

A. Award the Plaintiff her compensatory damages pursuant to the ADA;

B. Award the Plaintiff her punitive damages pursuant to the ADA;

C. Award the Plaintiff her legal expenses and attorney's fees and costs pursuant to 42 U.S.C. §1988;

D. Award the Plaintiff all other damages to which she is entitled; and

E. Award the Plaintiff all further relief that this Honorable Court deems just and proper.

## JURY DEMAND

**Plaintiff hereby demands a Jury Trial for all claims so triable.**

Dated: December 22, 2023

Respectfully submitted,

*Jennifer Fisher*

19 Maple Drive
Bedford, NH 03110
603-318-6784
jfish3826@gmail.com